**Frederick Douglas EBERHARDT,
Petitioner,**

v.

**A. T. ROBINSON, Superintendent
Powhatan Correctional Center,
Respondent.**

**Civ. A. No. 75-7.**

United States District Court,
W. D. Virginia,
Charlottesville Division.

May 22, 1975.

Gilbert W. Haith, Asst. Atty. Gen., Richmond Va., for respondent.

## OPINION and JUDGMENT

DALTON, District Judge.

In this petition for a writ of habeas corpus petitioner Frederick Douglas Eberhardt challenges his conviction by the Circuit Court of Nelson County, Virginia on July 19, 1972 for forcible rape following his plea of guilty. Petitioner's conviction was appealed to the Virginia Supreme Court which denied his petition for a writ of error and affirmed his conviction by order entered April 27, 1973. In this direct appeal petitioner challenged the voluntariness of his guilty plea. Petitioner thereafter filed a petition for a writ of habeas corpus in the Virginia Supreme Court which was denied and dismissed on December 19, 1974.

In this petition the petitioner challenges his conviction on the following grounds:

1) that his guilty plea was involuntary;

2) that he was denied effective assistance of counsel;

3) that he was subjected to an illegal line-up by not being advised of his right to have counsel present and the line-up was prejudicial;

4) that his arrest was illegal;

5) that he was denied a timely preliminary hearing.

Plaintiff has exhausted his state court remedies with respect to each of these claims.

On the day of petitioner's trial he pled not guilty and waived his right to a trial by jury. The Commonwealth proceeded with its case and near the end of the first day had presented fifteen witnesses and nineteen exhibits. This evidence had at that point made out a strong case of petitioner's guilt. Shortly after court had resumed at 6:30 p.m. with the Commonwealth presenting its sixteenth witness, petitioner's counsel informed the court that something had come up of which he was not aware and requested that he be given "about two minutes with my client and with the court reporter." This request was granted, and sometime thereafter petitioner and his counsel returned to the courtroom and petitioner's counsel informed the court that his client wished to change his plea to guilty. A written notarized request to that effect from the petitioner was submitted. Petitioner was then re-arraigned and his plea of guilty was entered. The trial judge questioned petitioner regarding the voluntariness of his plea of guilty and thereafter accepted it. The following exchange occurred before the guilty plea was accepted:

"THE COURT: All right, Mr. Eberhardt, before accepting your plea of guilty and allowing you to change your plea, it is necessary for the Court to ask you certain questions.

THE DEFENDANT: Yes, sir.

BY THE COURT:

Q. Some of these will be a repetition of the ones I asked you this morning on your not guilty plea and on the waiver of trial by jury but I will go on and repeat them anyway. What is your full name and what is your age?

A. Frederick Douglas Eberhardt. I am 41 years of age. I was born February 23, 1931.

Q. You are the person charged in the indictment with the commission of this offense of rape that was read to you this morning?

A. I am, Your Honor.

Q. And you fully understand this charge against you?

A. Yes, sir.

Q. Now you are entering this plea of guilty, that is changing your plea from not guilty to guilty, freely and voluntarily on your part?

A. Yes, I am, Your Honor.

Q. And are you entering the plea of guilty because you are in fact guilty of the crime charged?

A. Yes, I am, Your Honor.

Q. And do you understand that by pleading guilty you are not entitled to a jury trial in any event?

A. Yes, I am, Your Honor.

Q. Now, has anyone connected with the State, such as the Police or Commonwealth's Attorney or any other official in any manner threatened you or forced you to enter this plea of guilty?

A. No, Your Honor, I just did some thinking.

Q. You are not under any force or duress?

A. No, sir.

Q. Or undue influence to change your plea?

A. No, sir, Your Honor, I just have a clear conscience of guilt to the charge and that is all. That is all that motivated it.

Q. Has anyone made you any promise of leniency if you plead guilty?

A. No, sir, Your Honor.

Q. Now, the Commonwealth's Attorney may have advised you or your attorney what punishment he will recommend if you plead guilty. Has anyone made you any other promise of leniency?

A. No promises have been made to me at any time about anything.

Q. Do you understand in imposing punishment the Court is not bound by any possible agreement between you and your counsel and the Commonwealth's Attorney; that the court may not follow any recommendation of the Commonwealth's Attorney?

A. I, do, Your Honor.

Q. And do you understand if I accept your plea of guilty the maximum punishment could be life imprisonment?

A. I do, Your Honor.

Q. If you have been previously sentenced to confinement in a penitentiary, additional punishment could possibly be imposed under the multiple offenders statutes? Do you understand that?

A. Not fully, Your Honor.

Q. I don't think that would apply from state to state.

MR. MANGUM: I don't think so, Your Honor.

Q. You have never been previously convicted of a felony and sentenced to the Virginia Penitentiary?

A. No, sir, Your Honor.

Q. Do you understand there are laws where if you go to the penitentiary the second time or third time that you can receive additional punishment? Do you understand there are such laws?

A. Yes, sir, I have heard it.

Q. Now, have you had ample time to discuss with your attorney any possible defenses you may have to this charge?

A. I guess I had the time.

Q. Now, going back to when you first were represented by Mr. Mangum in this case, have you had plenty of time to discuss any offense defenses you might have to the charge?

A. Yes, sir.

Q. Have you discussed with your attorney whether you should plead not guilty or guilty?

A. No, sir, Your Honor, I just started over.

Q. Have you just had a conference with your attorney and discussed with him whether you should change your plea from not guilty to guilty?

A. No, I came to him and told him that I wanted to change the plea.

Q. You discussed it with him?

A. Yes, sir.

Q. And after discussing it with your attorney, did you decide for yourself you should plead guilty?

A. Yes, sir, that was solely my own decision.

Q. Are you entirely satisfied with the services of the attorney who was appointed to represent you in this matter, Mr. Mangum?

A. More than satisfied with him, Your Honor.

Q. Now, do you understand by pleading guilty you may waive any right to appeal from the decision of this court?

A. Yes, sir.

Q. And do you understand all of these questions I have asked you?

A. Yes, sir, Your Honor.

Q. All right.

(The arraignment on the indictment was again read to the defendant by the Clerk)

BY THE CLERK:

Q. How do you plead to this indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE CLERK: Your plea is guilty. Have your seat.

BY THE COURT:

Q. All right. Do you understand all of these questions I have just asked asked you, Mr. Eberhardt?

A. Yes, sir.

Q. Your plea of guilty has been found by the court to be voluntary and intelligent and the court accepts your plea of guilty and allows you to change your plea from not guilty to guilty."

From its review of the state court record in this case the court is satisfied that the constitutional requirement that a guilty plea be made voluntarily, intelligently and with a full understanding of its consequences was satisfied. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The state court record in this case also refutes petitioner's contention that he was denied effective assistance of counsel. His counsel ably represented him both in preparing for trial and during the trial. It was only after most of the state's strong case of guilt had been presented that petitioner volunteered his guilty plea. In light of the evidence of petitioner's guilt, his expressed desire to plead guilty after conferring with his counsel, and the efforts exerted by counsel in his defense prior to his guilty plea, the court is of the opinion that petitioner's claim of ineffective assistance is without merit.

Petitioner's remaining claims relate to alleged deprivations of constitutional rights occurring prior to the entry of his guilty plea. In *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) the court stated that where "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. 267, 93 S.Ct 1608. Accordingly, petitioner's claims of illegal line-up, illegal arrest and denial of a preliminary hearing are foreclosed by his plea of guilty.

For the above reasons, petitioner's petition for a writ of habeas corpus is denied and this case is dismissed.